**RECORD NO. 13-5081**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

*In The*

# United States Court of Appeals

## For The District of Columbia Circuit

**ARIANA KLAY; ELLE HELMER; NICOLE MCCOY; ROBIN KAHLE; LAMANDA CUMMINGS; REBECCA BLUMER; ERICA DORN; MARIEL MARMOL; JANET GALLA; CARLA BUTCHER; ERIC PRATT; CHRISTIAN EVERAGE,**

*Plaintiffs – Appellants*,

**v.**

**LEON E. PANETTA, Former Secretary of Defense; ROBERT M. GATES, Former Secretary of Defense; DONALD H. RUMSFELD, Former Secretary of Defense; JAMES F. AMOS, Commandant of the Marine Corps; JAMES T. CONWAY, Former Commandant of the Marine Corps; MICHAEL W. HAGEE, Former Commandant of the Marine Corps; RAYMOND EDWIN MABUS, JR., Secretary of the Navy; DONALD C. WINTER, Former Secretary of the Navy; GORDON R. ENGLAND, Former Secretary of the Navy,**

*Defendants – Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

———————————

## PAGE PROOF BRIEF OF APPELLANTS

———————————

Susan L. Burke
BURKE, PLLC
1000 Potomac Street, NW, Suite 150
Washington, D.C. 20007
(202) 386-9622

*Counsel for Appellants*

**THE LEX GROUP**DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## (A)  Parties and Amici

The parties appearing in the lower court and this appeal are Plaintiffs-Appellants, Ariana Klay, Elle Helmer, Nicole McCoy, Robin Kahle, Lamanda Cummings, Rebecca Blumer, Erica Dorn, Mariel Marmol, Christian Everage, Eric Pratt, Janet Gall and Carla Butcher, and Defendants-Appellees, former Secretaries of Defense Leon Panetta, Robert M. Gates, Donald Rumsfeld, and James F. Amos, James T. Conway, Michael W. Hagee, Ray Maybus, Donald C. Winter and Gordon England.   Undersigned counsel is unaware of any amici curiae.

## (B)  Rulings Under Review

Plaintiffs-Appellants appeal the District Court Order dismissing the First Amended Complaint entered on February 7, 2013 in Civil Action No. 12-cv-0350 (ABJ).

## (C)  Related Cases

Undersigned counsel is unaware of any related cases.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES………......................................................iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES............................................................1

STATUTES AND REGULATIONS ......................................................1

STATEMENT OF THE CASE ..............................................................1

STATEMENT OF THE FACTS ............................................................2

SUMMARY OF ARGUMENT .............................................................5

STANDARD OF REVIEW ..................................................................6

ARGUMENT………...……...............................................................6

   I.    The Federal Courts Should Not Abstain From Adjudicating Whether
        Defendants Violated Laws Duly Passed by Congress .........................6

        A.    Supreme Court Precedents Do Not Compel Abstention
              Here ...................................................................................9

            1.    Davis v. Passman, 442 U.S. 228 (1979) Controls ..........12

            2.    Military Leadership Is Not Outside Reach of the
                  Courts..........................................................................14

        B.    Awarding Money Damages Would Not Interfere with the
              Unique Military Disciplinary Structure ....................................16

C.    The Special Factors Abstention Doctrine Does Not Apply......19

1.    There Is No Showing of Any Impact on Military
Discipline ........................................................................20

2.    The Rapes and Assaults Were Not Incident To
Service ...........................................................................23

II.    The First Amended Complaint Alleges Facts That, If Proven,
Would Deprive Defendants of Any Qualified Immunity...................28

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
566 U.S. 662 (2009)..................................................................6, 11

*Bartley v. U.S. Dept. of Army*,
221 F. Supp. 2d 934 (C.D. Ill. 2002) ...................................... 19-20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................6, 11

*\*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971).................................................5, 7, 12, 13, 16,
17, 18, 21, 22, 23,
24, 27

*Bond v. United States*,
__U.S.___ (2011)..........................................................................13

*Brooks v. United States*,
337 U.S. 49 (1949)..................................................25, 26, 27, 28

*Brosseau v. Haugen*,
543 U.S. *County of Burke*,
660 F.2d 111 (4th Cir. 1981) ......................................................28

*Brown v. Glines*,
444 U.S. 348 (1980)....................................................................22

*Brown v. United States*,
739 F.2d 362 (8th Cir. 1984) ......................................................19

*Bush v. Lucas*,
462 U.S. 367 (1983)....................................................................18

*\*Chief authorities are designated by an asterisk*

*Carlson v. Green*,
    446 U.S. 14 (1980)........................................................................18

*\*Chappell v. Wallace*,
    462 U.S. 296 (1983)..........................................7, 8, 21, 22, 23

*Cioca et al. v. Rumsfeld et al.*,
    No. 12-10645 (4th Cir. 2013) ......................................................7

*Committee on Judiciary, U.S. House of Representatives v. Miers, et al.*,
    558 F. Supp. 2d 53 (D.D.C. 2008)............................................18

*Craig v. Boren*,
    429 U.S. 190 (1976)...................................................................20

*\*Davis v. Passman*,
    442 U.S. 228 (1979).................................................12, 13, 18

*Doyle v. Camelot Care Centers, Inc.*,
    305 F.3d 603 (7th Cir. 2002) .....................................................28

*Feres v. United States*,
    340 U.S. 135 (1950)....................................13, 23, 24, 25, 26

*Frontiero v. Richardson*,
    411 U.S. 677 (1973)...................................................................23

*Laird v. Tatum*,
    408 U.S. 1 (1972)..................................................................9, 16

*Leatherman v. Tarrant County Narcotics*
*Intelligence and Coordination Unit*,
    507 U.S. 163 (1993)................................................................6, 7

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ....................................................16

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007)...................................................................18

*Orloff v. Willougby*,
    345U.S. 83 (1953)..............................................................................21

*Parker v. Levy*,
    417 U.S. 733 (1974)...................................................................... 22-23

*Reid v. Covert*,
    354 U.S. 1 (1957)...........................................................................9, 16

*Saum v. Widnall*,
    912 F. Supp. 1384 (D. Colo. 1996) .............................................16

*Tabor v. Maine*,
    67 F.3d 1029 (2d Cir. 1995) .......................................................17

*Tiffany v. United States*,
    931 F.2d 271 (4th Cir. 1991) ......................................................16

*United States v. Brown*,
    348 U.S. 110 (1954)................................................................25, 27

*United States v. Nixon*,
    418 U.S. 683 (1974)..................................................................... 11-12

*United States v. Shearer*,
    473 U.S. 52 (1985)....................................................................8, 16

*United States v. Stanley*,
    483 U.S. 669 (1987)..........................................................7, 23, 24, 25

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I..............................................................................18, 28

U.S. Const. amend. V ........................................................................12, 18, 28

U.S. Const. Art. III, § 1 .........................................................................12

## STATUTES

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 2679(b)(2)(A) ..............................................................................19

42 U.S.C. § 1983 ..............................................................................................28

## RULE

Fed.R. Civ. P. 12(b)(6) ......................................................................................6

## OTHER AUTHORITIES

Carlos Manuel Vazquez and Stephen I. Vladeck, *State Law*
*The Westfall Act*, *and the Nature of the Bivens Question after*
*Minneci v. Pollard*, 161 U. Pa. L. Rev. (2012) .........................................19

H.R. REP. NO. 100-700 (1988), reprinted in 1988 U.S.C.C.A.N. 5945 .................19

*The Federalist* No. 8 (Hamilton) ...............................................................15

*The Federalist* No. 28 (Hamilton) .............................................................15

*The Federalist* No. 47 (Madison) ...............................................................13

*The Federalist* No. 51 (Madison) ...............................................................13

## JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 (final judgment rule).

## STATEMENT OF THE ISSUES

This dispute presents an important issue:  Should the federal courts hear a lawsuit alleging military leadership (including former Secretaries of Defense) repeatedly violated the laws adopted by Congress to reduce the high incidence of unpunished rape and sexual assault in the military, and by so doing deprived rape survivors of their Constitutional rights?

## STATUTES AND REGULATIONS

The district court's dismissal did not turn on any statute or regulation.

## STATEMENT OF THE CASE

On March 3, 6, 2012, Plaintiffs, all survivors of rape and sexual assault, filed the initial Complaint.  On June 3, 2012, Plaintiffs filed the First Amended Complaint.  On June 11, 2012, Defendants filed a motion to dismiss the First Amended Complaint.  *See* Dkt. No. 4 (motion) (hereinafter "Def. Mem.").

On February 7, 2013, the district court dismissed the lawsuit, reasoning in a lengthy memorandum decision that the judicial branch should voluntarily abstain from hearing any Constitutional claims made by servicemembers in order to further military discipline.  *See* Dkt. No. 14.

The rape survivors filed a notice of appeal in a timely fashion.  Dkt. No. 15.

## STATEMENT OF THE FACTS

Twelve plaintiffs filed this lawsuit, seeking damages for the harms they suffered during their military service.  These plaintiffs joined the military to serve this nation but instead were raped, sexually assaulted, harassed and deprived of their Constitutional rights to procedural and substantive due process, equal protection under the law, free speech, and right to a jury.  *See* First Amended Complaint ("FAC") at ¶¶ 223-240.  The rapes and assaults, however, were only the beginning.  When the rape survivors reported being raped by their colleagues, they were labeled "troublemakers" and forced to endure severe retaliation and harassment.  In many instances, reporting the rapes led to the termination of their military careers.  *See* FAC ¶¶ 7-298.

Some rape survivors were directed to be silent, and refrain from telling anyone about the rapes and the subsequent mistreatment.  *See e.g.*, FAC ¶ 156. The rape survivors could not take any actions that civilians are able to take to protect themselves from sexual predators, such as calling the police, going to a shelter, changing housing or jobs, or relocating.  *See* FAC ¶ 204.

Most of the rape survivors were drummed out the military services for being "troublemakers."  *See* FAC ¶¶ 6-180.  In contrast to the rape survivors, the sexual predators escaped any serious punishment.  The vast majority were not prosecuted

or punished in any meaningful way.  *See* FAC ¶¶ 6-180.  In short, in striking contrast to rape survivors, the sexual predators suffered little or no consequences.

The First Amended Complaint alleges that plaintiffs would not have been injured had Defendants, military leadership, followed Congressional mandates designed to eliminate rape and sexual assault in the military.  *See* FAC at ¶¶ 190-222.

The First Amended Complaint alleges that Defendants were on notice of the problem and the Congressional mandates, and also were on notice that Plaintiffs and other servicemembers could not exercise self-help, such as calling the police, going to a shelter, changing housing or jobs, or relocating.  *Id.*  The First Amended Complaint alleges Defendants' personal acts and omissions led to an increase in rape and sexual assault, including the rapes and sexual assaults against Plaintiffs. *Id.*

The First Amended Complaint alleges that Defendants failed to follow laws passed by Congress.  *See* FAC ¶¶ 212-223.  The Defendants violated a series of laws passed as part of the National Defense Authorization Acts, including laws required the creation of a commission, the creation of a database, and collection and reporting on rates of rape convictions.  *See* FAC ¶¶ 212-223.

As an example, Defendant Rumsfeld ignored Public Law 105-85, which required the establishment of a task force to investigate the manner in which the

military was handling reports of sexual predation.  Defendant Rumsfeld refused to

select any members of the task force and refused to direct the task force to begin its

Congressionally-mandated investigation regarding the military's handling of

sexual predation.  *See* FAC ¶ 219.  As another example, Defendant Gates directed

his subordinate to ignore a Congressional subpoena issued by the Congressional

House Oversight Committee on National Security and Foreign Affairs.  *See* FAC

¶ 220.  As a final example, Defendant Panetta violated, as had his predecessors, the

National Defense and Authorization Act for Fiscal Year 2009 provision requiring

the establishment of a centralized database with all reports of sexual predation in

the military services.  *See* FAC ¶ 222.

   Congress noticed Defendants' repeated failures to follow the law, and sent a

letter expressing concern.  *See* FAC ¶¶ 219.  But such Congressional concern had

no impact on Defendants, who continued to violate the laws.  As a result of

Defendants' wilful and intentional failures to follow the law, the number of

unpunished rape and sexual assaults continued to rise during each Defendant's

tenure.  *See* FAC ¶200.

    In the proceedings below, Defendants joined issue on the facts.  Each

Defendant claimed that he has "taken significant steps to reduce sexual assault

within the military and develop a comprehensive support system for victims of

sexual assault."  Def. Mem. at 1.

## SUMMARY OF ARGUMENT

This Court should overturn the District Court's dismissal of the rape survivors' *Bivens* lawsuit.  The rape survivors allege that they were deprived of their Constitutional rights because Defendants repeatedly and knowingly violated the laws enacted by Congress, which were designed to reduce the high rate of unpunished sexual predation in the military.

The Constitution gives Congress, not Defendants, the power and obligation to regulate military conduct.  Congress did so, passing a series of mandates requiring that the Secretaries of Defense and their military subordinates (hereinafter referred to as "Defendants") to take certain steps to reduce sexual predation in the military.  Yet Defendants violated the laws passed by Congress, and instead permitted sexual predation to flourish unchecked.  As explained below, this is one of those rare instances when the federal courts need to find an implied cause of action under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) in order to ensure the proper functioning of our democracy.

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's dismissal of the rape survivors' lawsuit under Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This Court construes all of the rape survivors' Complaint allegations in the manner most favorable to them.  *See e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

## ARGUMENT

## I.     The Federal Courts Should Not Abstain From Adjudicating Whether Defendants Violated Laws Duly Passed by Congress.

The rape survivors allege Defendants knowingly and willfully violated the laws passed by Congress and refused to cooperate with Congressional oversight.  *See* First Amended Complaint.  Defendants violated, among others, Public Law 105-85 and the National Defense Authorization Act for Fiscal Year 2009, which had been enacted by Congress to eliminate sexual predation in the military.  Had Defendants abided by laws duly passed by Congress, and implemented the Congressionally-required remedial actions, the rape survivors would not have been

subjected to the harms set forth in the Amended Complaint (rape, sexual assault, retaliation, being forced from service, etc.).[1]

To date, the judicial branch has never permitted servicemembers to seek monetary remedies under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Most recently, the Court of Appeals for the Fourth Circuit rejected an appeal by other rape survivors who brought claims quite similar to those brought here. *See Cioca et al. v. Rumsfeld et al.*, No. 12-10645 (Fourth Circuit July 23, 2013). The Fourth Circuit noted that the federal courts have never implied a *Bivens*-cause of action in the military context. *Id*. at 11. The Fourth Circuit abstained from exercising jurisdiction over the rape survivors' lawsuit, reasoning that Supreme Court jurisprudence regarding the "special factors" of military discipline counseled against adjudication. *See Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) and *United States v. Stanley*, 483 U.S. 669 (1987).

The district court below in this case reached a similar conclusion, finding that Supreme Court precedent requires it to abstain from inferring a *Bivens* remedy for plaintiffs. Memorandum Opinion filed on February 7, 2013, Dkt. No. 14 (hereinafter "Mem. Op."). The district court reasoned that the rape survivors'

---

[1] This causal allegation must be taken as true at this procedural stage in the proceedings. *See e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

injuries "arose out of or were in the course of activity incident to service" and therefore were barred under the Supreme Court's reasoning in *Chappell*. Mem. Op. at 6-18. The district court appeared to believe that Defendants are free to ignore Congressional mandates, stating "even if it could be shown that defendants intentionally refused to comply with congressional directives, reviewing this refusal would require the Court to analyze why military management decided to ignore the directives and whether those decisions were justified." Mem. Op. at 17. The district court cited to *United States v. Shearer*, 473 U.S. 52 (1985) as support for the proposition that the federal courts cannot adjudicate a lawsuit if adjudication would require "commanding officers 'to stand prepared to convince a civilian court of the wisdom' of their decisions. 473 U.S. at 58." Mem. Op. at 17.

The Fourth Circuit and the district court reached the wrong result, and created the very situation prohibited by the Constitution: military leadership elevated above Congressional control. If the judicial branch does not play its Constitutional role of ensuring that military leadership follows Congressional mandates, and instead defers to military leadership and insulates them from being liable for intentionally ignoring and violating laws duly passed by Congress, there is no civilian control over the military. Instead, as has occurred here, military leadership can routinely and repeatedly substitute their own judgment for the collective judgments of elected leaders in Congress. Here, military leadership

8

disagreed that identifying and incarcerating sexual predators should be a top priority for the military. They ignored the various Congressional mandates with the foreseeable result that sexual predators remained at large, and rates of rape and sexual assault continued to climb.

The district court erred in applying Supreme Court precedents. The courts need to adjudicate claims that arise when military leadership violate the laws established by Congress. Any other outcome violates the Constitutional structure of placing power over the military in civilian hands – namely, Congress. This Court should reverse the district court's decision, and remand the lawsuit for discovery.

## A.     Supreme Court Precedents Do Not Compel Abstention Here.

The Supreme Court has repeatedly cautioned the lower courts to adhere to the delicate balance of power enshrined in the Constitution, and refrain from elevating the military beyond the reach of civilian authority – namely, laws and oversight exercised by Congress. For example, in *Reid v. Covert*, 354 U.S. 1, 33-40 (1957), the Court cautioned against "break[ing] faith with this Nation's tradition – firmly embodied in the Constitution - of keeping military power subservient to civilian authority." (internal citation omitted). *See also Laird v. Tatum*, 408 U.S. 1, 15, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972) (Burger, C.J.) ("has deep roots in our history and found early expression ... in the constitutional

9

provisions for civilian control of the military"). This jurisprudence rightfully draws the line between (1) negligence claims designed to second-guess discretionary military judgments on matters within its expertise that are not the subject of Congressional rules and regulations, and (2) claims alleging violations of Congressional rules and regulations.

This lawsuit turns on whether Defendants abided by laws passed by their superiors – namely Congress. This lawsuit does not require the courts to examine any intra-military relationships but rather requires the courts to answer a very simple question that is well within judicial capacity: did Defendants follow or violate laws passed by Congress? Did Defendants adhere to the Congressional mandates expressed in those laws, or did they substitute their own judgments for Congressional judgments?

The rape survivors allege the following facts: Defendants blatantly violated those laws, and instead continued to turn a blind eye to the Congressionally-mandated task of detecting and incarcerating sexual predators in the military. As a result, he rates of rape and sexual assault, and retaliation against those who reported, steadily progressed upward during Defendants' tenure. Congress did not let Defendants' unwillingness to tackle the issue prevail, but instead passed legislation mandating that these officials take certain steps to get rape in the

military under control.  Yet these officials ignored Congressional legislation, thus setting themselves above the law.

These allegations are plausible and supported by specific factual detail in the Amended Complaint.  They meet the pleading standard set forth in *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The rape survivors are entitled to their day in court to establish the *bona fides* of these allegations unless there is some compelling reason the federal courts should abstain from exercising their Constitutional duty to hear claims from individuals whose rights have been violated by government officials.

If Defendants' blatant disregard for Congress and impermissible usurpation of power is permitted to evade judicial scrutiny, the delicate balance of power established by the Constitution will be destroyed.  The judiciary has an obligation to adjudicate such claims in order to ensure that one branch does not usurp the power bestowed on another branch.  As the Supreme Court explained, under "the basic concept of separation of powers ... that flow[s] from the scheme of a tripartite government" adopted in the Constitution, "the 'judicial Power of the United States' ... can no more be shared" with another branch than "the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto."  *United States v.*

11

*Nixon*, 418 U.S. 683, 704, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (quoting U.S. Const., Art. III, § 1). The functioning of our democracy relies upon this balance.

### 1.      *Davis v. Passman*, 442 U.S. 228 (1979) Controls.

The facts here are analogous to the facts in *Davis v. Passman*, 442 U.S. 228, 242 (1979).  There, a member of Congress fired a staff member merely because she was female.  Although such discrimination was barred by the Fifth Amendment of the Constitution, the staff member could not access the tort system or any statutory remedy to seek redress for the Congressman's misconduct. Congressional staff do not enjoy protections from sex discrimination afforded by Title VII.  The Supreme Court ruled, however, that Davis was entitled to bring forward a *Bivens* action to seek remedy for having the violation of her Fifth Amendment rights, which include the right to be free from discrimination.  *Id.*

As the Supreme Court explained in *Davis v. Passman*, 442 U.S. 228, 242 (1979), "unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means under than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of the judiciable constitutional right."

The rape survivors here are in the same posture as the Congressional staffer in the *Davis* case.  That case controls the outcome here.  That is, servicemembers

have no ability to bring state tort lawsuits. *See Feres v. United States*, 340 U.S. 135 (1950). Nor do servicemembers enjoy the statutory protections enjoyed by civilians – they are excluded from the scope of Title VII and other protective legislations. Thus, as in the *Davis* case, the rape survivors are pursuing the only path open to them to obtain justice for the injuries they suffered when their Constitutional rights were violated.

In such rare and unique instances, the federal judiciary needs to imply a cause of action to ensure implementation of the Constitution. *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The balance was explained by James Madison in *The Federalist* No. 51, *The Structure of the Government Must Furnish the Proper Checks and Balances Between the Different Departments* as being "essential to the preservation of liberty. . ." *The Federalist* No. 51 (Madison), 353-54. *See also The Federalist* No. 47 (Madison) 325-26, J Cook Edition. 1961, in which Madison further explains that separation of powers sets up a system of checks and balances in which the branches have control over "the acts of each other."

The Constitution's checks and balances are designed to ensure democracy, and protect all citizens, including servicemembers. As the Supreme Court held in *Bond v. United States*, __U.S.___, ___, 131 S. Ct. 2355, 2365 (2011), "Separation-of-powers principles are intended, in part, to protect each branch of government

13

from incursion by the others.  Yet the dynamic between and among the branches is not the only object of the Constitution's concern.  *The structural principles secured by the separation of powers protect the individual as well*."  (emphasis added).

### 2.      Military Leadership Is Not Outside Reach of the Courts.

Defendants try to muddy the waters surrounding the Constitutional implications of letting military leadership violate Congressional laws with impunity.  Defendants argue that because the Constitution places the power to govern military operations in Congress, not the Courts, the federal courts therefore cannot adjudicate whether military leadership followed laws passed by Congress. But this argument is a red herring designed to confuse.  Letting the federal courts adjudicate whether military leadership adhered to Congressional laws – or instead violated them and by doing so deprived citizens of their Constitutional rights – is not placing the judiciary in the position of supervising the military.  Quite the opposite:  if the judiciary refuses to adjudicate any claims alleging that the military ignored Congressional mandates, the military enjoys the very type of power not subject to checks and balances that the drafters of the Constitution feared.

The drafters of the Constitution were mindful of two dangers:  the English model, where the Executive (king) controlled the military, and the military dictatorship, where the military controlled the government.  Both models were antithetical to democratic ideals, and were rejected by the Constitution's adoption

of a balance of power, with Congress setting policy for the military.  *See generally*, *The Federalist* No. 8 (Hamilton), *The Federalist* No. 28 (Hamilton).

To understand the issue, take an example of what could occur outside the rape and sexual assault context.  Assume Congress passes a law that permits servicemembers to opt out of being vaccinated.  The military leadership, including the Secretary of Defense, disagree with Congress and believe such opting out could impact the health of the troops.  The military thus continues its own policy of forced vaccinations without regard for the Congressional mandate to the contrary.  When the injured parties sue, alleging the military failed to follow the law of the land and violated an act of Congress, the military leadership responds (as they do here) that judicial review of their misconduct is barred by the Constitutional grant of power to Congress.

Yet it is just such fallacious reasoning that swayed the district court.  Indeed, the district court believed that Supreme Court precedents should be read to permit military leadership to substitute their judgments for Congressional judgments, and simultaneously close the doors against those who are directly harmed by such usurpation of power.  The district court held that "even if it could be shown that ***defendants intentionally refused to comply with congressional directives***, ***reviewing this refusal would require the Court to analyze why military***

***management decided to ignore the directives and whether those decisions were
justified.***"  Mem. Op. at 17.

In short, the district court elevated military management over elected
officials in Congress.  Although the district court cited to *Shearer* as support for
the proposition, the Supreme Court jurisprudence simply does not support this
result.  Rather, the Supreme Court has cautioned lower courts time and time again
to be sure not to create absolute rules insulating the military from accountability.
*See Reid v. Covert*, 354 U.S. 1, 33-40 (1957); *Laird v. Tatum*, 408 U.S. 1, 15, 92 S.
Ct. 2318, 33 L. Ed. 2d 154 (1972) (Burger, C.J.) ("has deep roots in our history and
found early expression ... in the constitutional provisions for civilian control of the
military"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (courts obliged
to adjudicate); *see also Saum v. Widnall*, 912 F. Supp. 1384, 1396 (D.Colo. 1996)
(Servicemember's *Bivens* claims "tread on an area of expertise long conceded to
the courts."); *Tiffany v. United States*, 931 F.2d 271, 280 (4th Cir. 1991) (federal
courts have the power to adjudicate plaintiffs' allegations that the government
violated federal laws).

## B.    Awarding Money Damages Would Not Interfere with the Unique Military Disciplinary Structure.

At the outset, it is important to focus on what is being sought. The rape
survivors are not asking the Court to direct that the military leadership act in any
particular fashion to reduce rape and sexual assault.  As explained above,

16

Congress, not the courts, has the Constitutional power to tell military leadership what to do, and how to do it.  Instead, the rape survivors are asking for money damages to compensate them for the harms that occurred when military leadership ignored their boss – Congress.  Awarding monetary damages to compensate for past Constitutional violations does not intrude or interfere with military discretion and decisionmaking at all.  Money damages are the least intrusive remedy possible. *See Tabor v. Maine*, 67 F.3d 1029, 1047-48 (2d Cir. 1995), explaining "paying damages does not mean that the military is told by a court that it must do things differently, or even that it must take steps to controls its employees.  Injunctions and regulations tell people what they must do, and what they must not do, and it is these types of intrusions that would entangle courts in military affairs."

The Supreme Court has made clear that Constitutional deprivations should not go unchecked, but should be deterred by awards of money damages.  In *Bivens*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court reasoned that the right to sue federal officials for violating Constitutional rights does **not** turn on whether Congress has promulgated a statutory remedy for the specific Constitutional violations at issue.  Rather, the Constitution is self-executing, and permits those who have been injured by federal officials to sue for money damages.  Any other outcome, reasoned the Court, would fail to deter federal officials from violating the Constitution.  *Id.* at 408.

17

The *Bivens* Court addressed deprivations of the Fourth Amendment right to be free from unreasonable searches and seizures.  In subsequent cases, the Court extended the self-executing *Bivens* remedy to Constitutional deprivations under the Fifth Amendment (*Davis v. Passman*, 442 U.S. 228 (1979)), the Eighth Amendment prohibition on cruel and unusual punishment (*Carlson v. Green*, 446 U.S. 14 (1980)), and the First Amendment (*Bush v. Lucas*, 462 U.S. 367 (1983)).  As the Court stated in *Lucas*, the "federal courts have jurisdiction to decide all cases [arising] under the Constitution, laws, or treaties of the United States.  This jurisdictional grant provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that he has been injured by a violation of the Constitution . . . but also the authority to choose among available judicial remedies in order to vindicate constitutional rights."  *Lucas*, 462 U.S. at 369 (internal citations omitted).

Congress has made clear that federal officials such as Defendants are subject to *Bivens* claims brought by those who suffered Constitutional deprivations at their hands.  As the Supreme Court held in *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007), executive branch officials cannot evade judicial review when they ignore Congressional mandates.  *See also Committee on Judiciary*, *U.S. House of Representatives v. Miers*, *et al.*, 558 F. Supp. 2d 53 (D.D.C. 2008) (duty of courts to rule).

The Westfall Act expressly preserves actions against federal officials "brought for violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(2)(A).  The legislative history of the Westfall Act reveals Congress did not want to limit "the ability of victims of constitutional torts to seek personal redress from Federal employees who allegedly violated their Constitutional rights." *See* H.R. REP. NO. 100-700, at 5-6 (1988), reprinted in 1988 U.S.C.C.A.N. 5945, 5949-50.  *See also* Carlos Manuel Vazquez and Stephen I. Vladeck, *State Law*, *The Westfall Act*, *and the Nature of the Bivens Question after Minneci v. Pollard*, 161 U. Pa. L. Rev. (2012).  There is no legal reason to permit Defendants to evade accountability for their refusals to abide by the laws passed by Congress.

Thus, our legal system favors adjudication unless there is some compelling reason to support slamming the courthouse doors on injured individuals. Defendants argue, and the district court agreed, that the Supreme Court's "special factors" abstention doctrine applied here and barred adjudication.

### C.    The Special Factors Abstention Doctrine Does Not Apply.

That is wrong.  Serious harm has been done as a result of this overreading of the Supreme Court's ruling.  *See e.g.*, *Brown v. United States*, 739 F.2d 362, 363, 365 (8th Cir. 1984) (refusing to hear claims arising from a racially-motivated mock lynching) and *Bartley v. U.S. Dept. of Army*, 221 F. Supp. 2d 934, 937, 948 (C.D.

Ill. 2002) (refusing to hear rape and sodomy claims).  It should not be misinterpreted to apply here.

The "special factors" doctrine, properly understood, strikes a balance between protecting individual Constitutional rights and protecting the military's ability to pursue lawful military missions.  The federal courts should not apply the "special factors" doctrine – a judicial creation – each and every time a servicemember brings a Constitutional claim without regard to the underlying factual context.  Doing so would result in the federal courts creating the very situation the Constitution is carefully designed to avoid:  a military operating outside of and beyond the reach of civilian control.

### 1.    There Is No Showing of Any Impact on Military Discipline.

The First Amended Complaint alleges Defendants violated Congressional law.  These bad acts were not designed to further any military mission whatsoever, served no rational relationship to any important government objective, and instead deprived the rape survivors of their Constitutional rights.  *Craig v. Boren*, 429 U.S. 190, 197 (1976).  If Defendants thought Congress misguided in passing the laws governing how the military handled sexual predations in its ranks, they were free to ask Congress to amend the law.  But Defendants are not free to view themselves as wiser than Congress, and simply ignore any laws they do not like.

20

The district court interpreted *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) as controlling precedent requiring it to dismiss the rape survivors' lawsuit. But the district court erred in viewing the "unique disciplinary structure of the military establishment" as a per se "special factor" that counsels against judicial intrusion. *Chappell v. Wallace*, 462 U.S. at 304; *see also Orloff v. Willougby*, 345U.S. 83, 93-94 (1953).

The rape survivors are ***not*** asking the federal courts to adjudicate the substance of military discipline and invade the province of Congress, the political branch. Rather, they are asking the federal courts to adjudicate whether Defendants violated the laws passed by Congress, the political branch directly responsible to the electorate.

In *Chappell*, five enlisted men serving on a combat vessel sued their direct supervisors (commanding officer, four lieutenants, and three non-commissioned officers), alleging the supervisors had "failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual severity." *Chappell*, 462 U.S. at 297.

The *Chappell* Court held that the servicemen could not sue their direct superiors and challenge lawful military orders as motivated by discriminatory animus. The *Chappell* Court held that *Bivens* claims should be subjected to the same "incident to service" analysis as FTCA claims. The *Chappell* Court stated,

21

"[a]lthough this case concerns the limitations on the type of nonstatutory damage remedy recognized in *Bivens*, rather than Congress' intent in enacting the Federal Tort Claims Act, the Court's analysis in *Feres* guides our analysis in this case." *Id.*

The *Chappell* Court held that combat required immediate compliance with military procedures and orders. As a result, the plaintiffs were challenging conduct (military orders from a direct supervisor) that had a military function and purpose: training servicemembers to show the absolute discipline and obedience to command that is needed in combat. The *Chappell* Court held that "that relationship [of immediate obedience] is at the heart of the necessary or unique structure of the military establishment." *Id.*

Although the *Chappell* Court found abstention warranted by the facts (combat, lawful direct orders, etc.), the Court expressly rejected a *per se* exclusion against *Bivens* claims by servicemembers. The Supreme Court held that "[t]his Court has never held, ***nor do we now hold***, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983). The Court cited with approval a series of cases in which military personnel were permitted to seek redress in federal courts: *Brown v. Glines*, 444 U.S. 348, 200 S. Ct. 609, 62 L.Ed.2d 540 (1980); *Parker v. Levy*, 417 U.S. 733, 94

22

S. Ct.2547, 41 L. Ed. 2d 439 (1974); and *Frontiero v. Richardson*, 411 U.S. 677, 93 S. Ct. 1764, 36 L.Ed.2d 583 (1973).

It is clear that the district court ignored the Supreme Court's cautions, and instead created a *per se* rule against servicemembers' *Bivens* claims. The district court dismissed the lawsuit without any fact-finding on whether adjudication would impact military discipline in any way, let alone in a negative way.

## 2.    The Rapes and Assaults Were Not Incident To Service.

Neither *Chappell* nor *United States v. Stanley*, 483 U.S. 669, 682 (1987) compel dismissal of the rape survivors' claims. The district court erred in finding that the rape survivors' claims arose from activities incident to service. In *Stanley*, as in *Chappell*, the Supreme Court refrained from adopting a *per se* rule barring servicemembers from bringing *Bivens* claims. Instead, the Court reasoned that such claims could be brought if they arose from Constitutional deprivations that were not "incident to military service."[2] The *Stanley* Court held that the "incident

---

[2] That formulation first appeared in the Supreme Court's decision in *Feres v. United States*, 340 U.S. 135, 146 (1950). The *Feres* Court adopted this test based on the legislative history of the Federal Tort Claims Act ("FTCA"). The Court explained that Congress passed the FTCA in response to "a strong demand that claims for tort wrongs be submitted to adjudication" rather than being subject to private bills. The Court noted, however, that Congress was suffering from no plague of private bills on the behalf of military and naval personnel because a comprehensive system of relief had been authorized for them and their dependents by statute."

to service" formulation defined the parameters of the abstention required by the *Bivens* "special factors counseling hesitation" language. *Id.* at 683-84.

The *Stanley* Court, however, did not actually decide whether the "incident to military service" test barred Plaintiff Stanley's Constitutional claims alleging he had been given LSD without his knowledge or consent. The Supreme Court noted that – if it were to review the issue *de novo* – Plaintiff Stanley may be able to show that the Constitutional deprivation was not incident to service. (Stanley argued that no military purpose had been shown.) The Supreme Court clearly envisioned factual findings as a prerequisite to special factors abstention, holding that "even if *Feres* principles apply fully to *Bivens* actions, further proceedings are necessary to determine whether they apply to this case."

The Supreme Court ruled against Stanley, however, because it was not considering the issue *de novo*. Rather, Stanley had litigated and lost the "issue of service incidence" in lower court proceedings.[3] In the lower court, the United States prevailed because it made a persuasive factual showing that Stanley was given the LSD "for the purpose of ascertaining the effects of the drug on their

---

[3] Justice O'Connor dissented, as she believed the conduct at issue – giving the solider LSD without his consent – could not, as a matter of law, be considered "incident to service." She reasoned that "conduct of the type alleged in this case is so far beyond the bounds of human decency that ***as a matter of law it simply cannot be considered a part of the military mission.***. . .No judicially created rule should insulate from liability the involuntary and unknowing human experimentation alleged to have occurred in this case."

24

ability to function as soldiers and to evaluate the validity of the traditional security training . . . . in the fact of unconventional drug enhanced interrogations." *Id*. at 696, n.14.

There are no facts to support such a finding here. The rape survivors were active-duty servicemembers when they were raped by their colleagues, but controlling Supreme Court jurisprudence establishes that plaintiff's status as an active duty service member, standing alone, does not mean that an injury is "incident to service." *United States v. Brown*, 348 U.S. 110, 75 S. Ct. 141, 99 L. Ed. 139, (1954). In order to fall within the scope of the "incident to service," the injury must actually arise from conduct done to further a military mission.

In *Brown*, a solider had injured his knee performing a military mission, and received an honorable discharge. After his discharge, he sought medical care from a Veterans Administration Hospital, which acted negligently, and permanently injured the knee. When the United States sought to dismiss Brown's lawsuit as arising from an injury "incident to service," the Supreme Court refused, holding that the case was controlled by *Brooks v. United States*, 337 U.S. 49, 69 S. Ct. 918, 93 L. Ed. 1200 (1949), not by *Feres*. The Court reasoned that "[t]he *Feres* decision did not disprove of the *Brooks* case. It merely distinguished it, holding that the Federal Tort Claims Act does not cover injuries to servicemen where the

25

injuries arise out of or in the course of activity incident to service." *Feres*, 340

U.S. 135, 146, 71 S. Ct. 153, 159. [4]

 In *Brooks*, two active duty soldiers (and brothers) and their father, all named

Brooks, were driving on a public highway when a civilian employee driving an

Army truck ran into them.  The accident killed the father and one of the soldiers,

and seriously wounded the other soldier.  The United States persuaded the Court of

Appeals for the Fourth Circuit that members of the Armed Forces could not sue the

United States.

 On appeal, the Supreme Court reversed, holding that servicemembers are

permitted to bring tort claims against the United States.  *Brooks v. United States*,

337 U.S. 49, 69 S. Ct. 918, 93 L. Ed. 1200 (1949).  The Supreme Court reasoned

that Congress did not preclude servicemembers from the scope of the FTCA.  The

Court held "[w]e are not persuaded that 'any claim' [in the FTCA] means 'any

claim but that of a serviceman." *Id*. at 50.  The Court explained that the exceptions

themselves revealed that Congress intended to include servicemembers within the

scope of the Act:  "[i]t would be absurd to believe that Congress didn't have

Servicemen in mind in 1946, when the statute was passed.  The overseas and

combatant activities exceptions make this plain." *Id*.

---

[4] Three Justices (Black, Reed, Minton) dissented, reasoning the veteran would
not have been entitled to care at the Veterans Administration Hospital "but for" his
military service.  The majority was not persuaded the "incident to service"
formulation should be so broadly construed.

The United States argued there would be "dire consequences" if the Court permitted servicemembers to sue the United States. But the Court rejected that argument because the conduct at issue did not serve a military function. Rather, the Court held "we are dealing with an accident which had nothing to do with Brooks' army careers, injuries not caused by their service except in the sense that all human events depend on what has already transpired." *Id.* at 52. The Court expressly noted that "[w]ere the accident incident to the Brooks' service, a wholly different case would be presented." *Id.*

In sum, the district court failed to follow the Supreme Court's repeated cautions, and instead adopted a *per se* rule barring *Bivens* claims by servicemembers. The district court ignored Supreme Court jurisprudence by implicitly adopting the very "but for" formulation of the "incident to service" test that the Supreme Court rejected in *Brown*. The record lacks any shred of evidence or argument to suggest that the rape survivors were raped to advance a military mission. The Defendants does not – and cannot – argue that the rapes and assaults were designed to further a military mission, such as teaching soldiers to be "obedient" to those higher up in the military hierarchy.

The Supreme Court's reasoning in *Brown* and *Brooks* controls here. The mere fact that the rape survivors were on active duty when they were raped does not transform the activity – raping – into an activity incident to military service any

27

more than the Brooks brothers' duty status transformed their activity – driving – into a military activity.  The rape survivors' injuries are not injuries "caused by their service except in the sense that all human events depend on what has already transpired." *Brooks*, 337 U.S. 49 at 52.

## II.     The First Amended Complaint Alleges Facts That, If Proven, Would Deprive Defendants of Any Qualified Immunity.

The district court held that the rape survivors had failed to plead sufficient facts under *Iqbal* to overcome Defendants' invocation of qualified immunity.  Yet the First Amended Complaint alleges purposeful and intentional violations of statutory law sufficient to deprive Defendants of any immunity.  Such facts, if proven at trial, suffice to overcome Defendants' immunity.  Such malfeasance in office violated Plaintiffs' clear and uncontested Constitutional rights under the First and Fifth Amendments.  *See Brosseau v. Haugen*, 543 U.S. *County of Burke*, 660 F.2d 111 (4th Cir. 1981); and *Doyle v. Camelot Care Centers*, *Inc.*, 305 F.3d 603, 615 (7th Cir.2002) (finding under 42 U.S.C. § 1983 that allegations that agency's most senior officials were personally "responsible for creating the policies, practices and customs that caused the constitutional deprivations ... suffice at this stage in the litigation to demonstrate . . . personal involvement in

[the] purported unconstitutional conduct"). The district court erred in dismissing the rape survivors' FAC without granting leave to amend.[5]

## CONCLUSION

The United States Constitution places the power to control the military in civilian hands.  This power is exercised by Congress, which alone has the authority to make rules and regulations governing military discipline.  Here, the military leadership tasked with implementing Congressional directives instead violated them, causing grave and serious harm to servicemembers' Constitutional rights.  These circumstances compel this Court to overturn the District Court's misguided dismissal, and remand the lawsuit for adjudication of the rape survivors' allegations.

---

[5] The rape survivors' brief below asked the Court to dismiss without prejudice to amendment in the event the court ruled the pleading failed to meet the Iqbal standard.  The district court instead dismissed without granting leave to amend, and faulted the rape survivors for not filing a motion seeking leave to amend in advance of learning that the district court was dismissing the lawsuit. Given that Defendants' motion to dismiss was briefed and pending, and the rape survivors believed (and continue to believe) that the pleading overcomes the immunity standard, it is unclear why the district court failed to grant the rape survivors a single opportunity to amend.  The rape survivors amended only once on their own initiative during the initial period when court leave is not needed.

Respectfully submitted,

/s/ Susan L. Burke
Susan L. Burke
1000 Potomac Street, NW, Suite 150
Washington, DC  20007
(202) 224-1409

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,679*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 31, 2013                    /s/ Susan L. Burke
                                        *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 31st day of July, 2013, I caused this Page-Proof

Brief of Appellants to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Lowell V. Sturgill, Jr.
> Barbara L. Hewig
> U.S. DEPARTMENT OF JUSTICE
> 950 Pennsylvania Avenue, NW
> Washington DC  20530
> (202) 514-2000
>
> *Counsel for Appellees*

I further certify that I caused the required copies of the Page-Proof Brief of

Appellants to be hand filed with the Clerk of the Court.

/s/ Susan L. Burke

*Counsel for Appellants*